UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Crim. No. 08-162 (HHK) |
| ) | |
| NICHOLAS PROCTOR, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS
TAKEN IN VIOLATION OF THE UNITED STATES CONSTITUTION**

Defendant Nicholas Proctor, through undersigned counsel, respectfully moves this Honorable Court to suppress as evidence against him at trial all statements taken by law enforcement officers from Mr. Proctor on February 29, 2008, because those statements were taken in violation of *Miranda* and the Fifth Amendment of the United States Constitution.

**FACTUAL ALLEGATIONS**

According to discovery provided by the government, on February 22, 2008, officers from the Metropolitan Police Department ("MPD") obtained a search warrant from a Superior Court judge for premises located at 1813 Frederick Douglass Place, SE, Washington, D.C. The search warrant was for "narcotic related items." *See* Ex. 1 (Search Warrant).

The search warrant for 1813 Frederick Douglass Place was based on an affidavit submitted by MPD Investigator James Craig. In the affidavit, Inspector Craig alleged that a "Special Employee" had purchased narcotics from the address within the previous 72 hours. *See* Ex. 2 (Affidavit). The affidavit also attempts to vouch for the reliability of the Special Employee (or "SE"), as the search warrant was premised entirely on actions of the Special Employee that

occurred outside the direct oversight of the MPD officers, *i.e.*, the Special Employee's alleged purchase of a small amount of crack cocaine from the house located at 1813 Frederick Douglass Place. In terms of the SE's reliability, the affidavit states:

> Since working with the members of the Seventh District Vice Unit, the 'SE' has provided numerous bits of information which has resulted in numerous narcotic and gun related arrest and seizures. The 'SE', *since working with the Vice Unit*, has never been proven unreliable. The 'SE' has been working with the Metropolitan Police Department since 1998 and working with the Seventh District Vice Office *since September 2007.*

*Id. (emphasis added).*[1] The affidavit does not make any statements regarding the SE's reliability prior to September 2007, when "it" apparently began working for the Vice Unit. Indeed, judging from the language of the affidavit set forth above, it is arguable from that Inspector Craig intentionally avoided submitting information regarding the Special Employee's "track record" prior to September 2007.

On February 29, 2008, MPD officers executed the search warrant at 1813 Frederick Douglass Place. Before advising Mr. Proctor of his *Miranda* rights, but after handcuffing Mr. Proctor, the government alleges that Mr. Proctor made several statements. Specifically, after seeing his mother, Rosie Proctor, placed in handcuffs, the government alleges Mr. Proctor said words to the effect of "It's all mine" and "She had nothing to do with it." It is unclear from the current state of discovery whether Mr. Proctor's statements were allegedly made before or after

---

1/   Based upon the apparent artful wording of this section of the affidavit, defense counsel has requested additional information from the government regarding the Special Employee at issue in this case. In the event the Special Employee, prior to September 2007, submitted unreliable information to law enforcement, or if the government will not tell the defense whether or not "it" has ever submitted unreliable information to law enforcement, the defense respectfully reserves the right to file additional motions pertaining to this issue.

the alleged recovery of crack cocaine from the residence at 1813 Frederick Douglass Place. Following the recovery of the drugs, Mr. Proctor and others were transported back to the police station.

## DISCUSSION

I. **ALL STATEMENTS MADE BY MR. PROCTOR MUST BE SUPPRESSED BECAUSE THEY WERE MADE INVOLUNTARILY AND IN VIOLATION OF *MIRANDA*.**

   A. **Mr. Proctor's Statements Were Involuntary**

The government has alleged that Mr. Proctor made a statement or statements to police prior to the reading of his *Miranda* rights. Those statements are that ""It's all mine" and "She had nothing to do with it," which allegedly referred to Mr. Proctor's mother. Before introducing those statements at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary. *See Lego v. Twomey*, 404 U.S. 477 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." *Mincey v. Arizona*, 437 U.S. 385, 402 (1978). The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. *Fikes v. Alabama*, 352 U.S. 191 (1957); *see also Gallegos v. Colorado*, 370 U.S. 49 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible requires close scrutiny of the facts of each individual case); *Clewis v. Texas*, 386 U.S. 707 (1967).

Specifically, the Court must examine the efforts to overbear Mr. Proctor's free will in

relation to his capacity to resist those efforts. *Davis v. North Carolina*, 384 U.S. 737 (1966); *Culombe*, 367 U.S. at 607. The Court must examine Mr. Proctor's "background, experience, and conduct," *North Carolina v. Butler*, 441 U.S. 369, 375 (1979), to determine whether his statements were the product of a rational intellect and a free will. *Blackburn v. Alabama*, 361 U.S. 199, 208 (1980). Here, the evidence at a hearing will show that any statements made by Mr. Proctor were made involuntarily and thus must be suppressed under the Fifth Amendment.

        **B.**        **Mr. Proctor's Pre-*Miranda* Statements were Made in Violation of *Miranda***

Even if the statements were made voluntarily, *Miranda* requires suppression of Mr. Proctor's statements during the government's case-in-chief because Mr. Proctor was not adequately apprised of his right against self-incrimination prior to undergoing custodial interrogation. *See, e.g., Pennsylvania v. Muniz*, 496 U.S. 582, 110 S. Ct. 2638, 2643-44 (1990). A person is in "custody" under *Miranda* when he "has been . . . deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

In this case, certain of Mr. Proctor's statements were given prior to the administration of *Miranda* rights. The government must therefore establish that those statements were not the product of custodial interrogation. In the event it cannot, the statements must be suppressed.

## CONCLUSION

For the foregoing reasons, and any other reasons the Court finds just and reasonable, Mr. Proctor requests that the Court suppress all statements taken by law enforcement from Mr. Proctor on February 29, 2008.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Jonathan S. Jeffress, Esq.
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Ste 550
Washington, D.C.  20004
(202)  208-7500

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) ) ) | |
| v. | ) ) | Crim. No. 08-162 (HHK) |
| **NICHOLAS PROCTOR,** | ) ) ) | |
| **Defendant.** | ) ) | |

### ORDER

Upon consideration of defendant's motion to suppress, any opposition thereto, and for good cause shown, it is hereby

**ORDERED** that defendant's motion is **GRANTED**; it is further

**ORDERED** that all statements taken from Mr. Proctor on February 29, 2008 are **SUPPRESSED**.

                                                            _____
                                                            THE HONORABLE HENRY H. KENNEDY
                                                            UNITED STATES DISTRICT JUDGE

DATE:

# EXHIBIT 1

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## SEARCH WARRANT

TO: CHIEF OF POLICE OR ANY OTHER LAW ENFORCEMENT OFFICER
(Specific Law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

Affidavit, herewith attached, having been made before me by   Officer James Craig   #3528
_that he has probable cause to believe_
that on the (person) (premises) (vehicle) (object) known as   For the entire premises of 1813 ~~Fredrick Douglas~~ Place, Southeast
The premises is described as a multi story brown brick townhouse with a green door. The townhouse is labeled with
black numerals "1813" to the right of the front door. The green front door is surrounded by white trim.
(Frederick Douglass written above)

in the District of Columbia, there is now being concealed certain property,   Narcotic related items which your affiant defines as:
All narcotics, Crack Cocaine, drug paraphernalia, scales, packaging, cutting agents, monies derived from the sales of narcotics,
MPD prerecorded funds, documents relating to the possession or distribution of illicit narcotics or the accumulation of assets
derived from drug trafficking. Rental records, photographs, videotapes, mail matter that shows residency, and items described in
the attachment titled "Schedule A".

which is   Evidence of violation of D.C code 48 section 904.01   and as I am satisified
(Alleged grounds for seizure)

that there is probable cause to believe that the property so described is being concealed on the above designated ~~(person)~~ (premises)
~~(vehicle)(object)~~ and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search ~~in the daytime~~/at any time of the
day or night, the designated ~~(person)~~ (premises) ~~(vehicle)(object)~~ for the property specified and if the property be found there.

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE  an inventory of the property seized, to leave a copy of this
warrant and return to file, a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this  22  day of   Feb   , 20 08    _R. Wert[ ]_
Judge, Superior Court of the District of Columbia

## RETURN

I received the above detailed warrant on   FEB 22nd   , 20 08   and have executed it as follows:
On   FEB 29th   , 20 08 , at   6:35   P M., I searched the
(person)(premises) (vehicles) (object) described in the warrant and I left a copy of the warrant and return with
   Washington, Jamelia (Daughter)   properly posted.
(Name of person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:
Chunks of white rock substance, ziplocs containing green weed,
False bottom cans, mail matter, lease, lock w/key,
Vehicle Registration, Rubber Gloves, US Currency

This inventory was made in the presence of   Lt. Murphy, Craig, Peake, Harrison, Rochlin, Williams,
Logans, Harrison, Brown, Smith, Lytle
I swear that this is a true and detailed account of all property taken by me under this warrant.

Executing Officer

Subscribed and sworn to before me this _____ day of _____, 20 ___

Judge, Superior Court of the District of Columbia

Form CD(17)-1055 / Mar. 89

# EXHIBIT 2

PD 274

**Metropolitan Police Department**
**Washington, D.C.**

Affidavit in Support of an Application for
Search Warrant

____ **United States**                    ____ **Superior Court of the**
**District Court**                              **District of Columbia**

**SUBJECT:**

For the entire premises known as 1813 ~~Fredrick Douglas Place~~ Frederick Douglass PLACE SE, WDC. The premises is described as a multi story brown brick townhouse with a green door. The townhouse is labeled with black numerals "1813" to the right of the front door. The green front door is surrounded by white trim.

**RESUME:**

Your affiant in this matter is Investigator James Craig, a sworn officer employed by the Metropolitan Police Department, Washington, D.C., (MPD) since September 1997. I currently am assigned to the Seventh District Vice Unit. I have received narcotics training from the Drug Enforcement Administration Mid-Atlantic Laboratory and the Major Narcotics Branch of the Metropolitan Police Department, Multijurisdictional Counterdrug Training Center in Baltimore Maryland, and Northeast Counterdrug Training Center in Harrisburg PA. As a police officer I have participated in over hundred narcotics related arrests and the execution of multiple search warrants related to narcotics and dozens related to firearm offenses.

As a police officer I have learned that when selling drugs out-of-doors, narcotic traffickers rarely keep on their person or immediately about them their entire supply of drugs. They commonly retain much or most of their drug supply in their home or stash house, and keep only a small part of their entire supply readily at hand for sale. When going out to sell drugs out-of-doors, the usual street dealer will take enough drugs to sell for a fairly short period of time, and then return to their home or stash house to "re-up," that is to get another supply of drugs for retail sale. In this way they do not risk losing their entire supply if they are arrested by police or set upon by robbers. Thus, when a drug-dealer is arrested and his immediate street supply is seized, it is very likely that he will have hidden the

_____          _____
    **Affiant**  James Craig              **Assistant United States Attorney**
   Seventh District

**Subscribed and sworn to before me on**

_____
Judge, D.C. Superior Court                                **Page**

1

PD 274

**Metropolitan Police Department**
**Washington, D.C.**

## Affidavit in Support of an Application for Search Warrant

____ **United States**        ____ **Superior Court of the**
**District Court**                  **District of Columbia**

remainder of his supply at his residence or stash house. I also have learned that:

a. Like other persons who engage in a business over time, drug-dealers normally keep written records of what for them is their business, so they maintain tally sheets, books, records, receipts, notes, ledgers, bank records, money orders, and other papers documenting their importation, manufacture, transportation, ordering, and sale and distribution of these drugs. They keep these documents where they have ready access to them, and where they feel they are most secure, and commonly this is in their homes.

b. Like other businesspersons, drug dealers keep their documents and records for long periods of time regardless of whether their immediate business value has diminished. The documentary evidence that I know to have been seized most commonly in other investigations includes tally sheets, ledgers of past drug transactions, particularly with suppliers and with lower-level distributors, telephone bills; and, address books.

c. Because dealing in illegal drugs is a strictly cash business, persons who traffic in narcotics routinely generate a large amount of currency, which they commonly keep outside the normal banking system. Consequently, many drug dealers have in their homes or primary places of business a secret place or cache to store large amounts of cash (and drugs awaiting sale) and other valuables generated from drug sales, such as jewelry or other non-cash proceeds of illegal drug

_____
**Affiant**
**Seventh District**

_____
**Assistant United States Attorney**

**Subscribed and sworn to before me on**

_____
Judge, D.C. Superior Court

2                                                                                                           Page

PD 274

**Metropolitan Police Department**
**Washington, D.C.**

## Affidavit in Support of an Application for Search Warrant

____ **United States District Court**     ____ **Superior Court of the District of Columbia**

transactions, as well as documents showing how much they have made and how they get, transfer, hide, or spend money made from selling drugs.

d. Persons who deal in illegal drugs commonly keep address lists and telephone books or other papers that reflect the names, addresses, or telephone numbers of their associates in their illegal organization. Although sometimes kept on the dealers' persons or in their cars, most commonly they are stored or kept in the drug-dealers' residences or primary places of business, such as a stash or cut house. In addition, drug-dealers often use telephone systems and beepers or pagers to maintain contact with their associates in their illegal businesses or residences.

e. Persons who deal in illegal drugs often take or cause to be taken, photographs of themselves, their associates, their property, and their illegal drugs. Although some pictures may be kept on the dealers' persons, they are most commonly found at the drug dealer's residence

_____
**Affiant**
**Seventh District**

_____
**Assistant United States Attorney**

**Subscribed and sworn to before me on**

_____
Judge, D.C. Superior Court

Page

3

PD 274

**Metropolitan Police Department**
**Washington, D.C.**

Affidavit in Support of an Application for
Search Warrant

_____ **United States**    _____ **Superior Court of the**
**District Court**                **District of Columbia**

### INVESTIGATION:

Within the past 72 hours, a Special Employee, herein referred to as "SE", met with undercover officers of the Metropolitan Police Departments Seventh District Vice Unit. The "SE" was thoroughly searched and found to be free of any contraband or monies. The "SE" was then given prerecorded MPDC funds for the purchase of illicit narcotics. The "SE" advised the "UC" that crack cocaine was being sold out of a home located at 1813 ~~Fredrick~~ Frederick DouglassPlace SE WDC. The "SE" was then directed to respond to 1813 ~~Fredrick Douglas Place~~ Frederick Douglass Pl SE WDC. The "SE" then exited the UC vehicle and was observed walking directly to the front door of the location. The "SE" knocked on the door and was greeted by an unknown black male. The "SE" engaged the unknown male in conversation and expressed "it's" wish to purchase a useable amount of crack cocaine. The unknown black male invited the "SE" inside of 1813 ~~Fredrick Douglas~~ Frederick Douglass Place SE and escorted "it" to the living room area. The unknown black male then advised the "SE" to wait in the living room and walked out of the "SE's" view. The unknown black male returned less than a minute later. The "SE" then handed the unknown black male $20.00 in prerecorded MPD Vice funds for two pink ziplocs both of which contained a chunk of white rock like substance. The "SE" then left the residence and was observed walking directly back to the "UC" without making any stops. The "SE" then handed the ziplocs over to the "UC". The "SE" was then thoroughly searched again and still found to be free of all contraband. The "UC" then performed a field test on a portion of the white rock which field tested positive for Cocaine. Since working with the members of the Seventh District Vice Unit, the "SE" has provided numerous bits of information which has resulted in numerous narcotic and gun related arrest and seizures. The "SE", since working with the Vice Unit, has never been proven unreliable. The "SE" has been working with the Metropolitan Police Department since 1998 and working with the Seventh District Vice Office since September 2007.

### PROBABLE CAUSE

_Ofc. James Gray_
**Affiant**
**Seventh District**

_____
**Assistant United States Attorney**

**Subscribed and sworn to before me on**

_____
Judge, D.C. Superior Court

4                                                    **Page**

PD 274

**Metropolitan Police Department**
**Washington, D.C.**

## Affidavit in Support of an Application for Search Warrant

____ **United States**                    ____ **Superior Court of the**
**District Court**                              **District of Columbia**

Your affiant submits that there is probable cause to believe that, contained within the residence of 1813 ~~Fredrick Douglas~~ *Frederick Douglass* Place SE WDC items of evidence. Your affiant submits that there is probable cause to believe that the residence of 1813 ~~Fredrick Douglas~~ *Frederick Douglass* Place SE WDC possesses within Crack Cocaine, financial ledgers, paraphernalia related to drug packaging, sale, production, and use, the proceeds of drug sales, and documents and other items evidencing the trafficking in illegal narcotics. In addition, your affiant submits that there is probable cause to believe that within the residence of 1813 ~~Fredrick~~ *Frederick* ~~Douglas~~ *Douglass* Place SE WDC, members of the police will locate and seize as evidence, those items described within Schedule A, attached hereto, and included in this affidavit in support of this search warrant.

Therefore, I respectfully request that a search warrant issue, granting permission to the police, to search for and seize from 1813 ~~Fredrick Douglas~~ *Frederick Douglass* Place SE WDC, the above described items, all controlled substances and other contraband, drug paraphernalia, proceeds of narcotics trafficking, and evidence and indicia of drug trafficking, and the items listed in Schedule A, and MPD prerecorded funds used to purchase the above referenced controlled substance.

Further than this, affiant sayeth not.

Reviewed by:                                              Sworn to by:

_____
Assistant U.S. Attorney                                  Affiant
                                                          Officer James Craig
                                                          Metropolitan Police Department

Subscribed and sworn to before me this 22nd day of _____ 2008
Judge Superior Court of the District of Columbia

_____                _____
Affiant                                                   Assistant United States Attorney
Seventh District

Subscribed and sworn to before me on 2/22/08

_____
Judge, D.C. Superior Court                                                              Page

5

PD 274

**Metropolitan Police Department**
**Washington, D.C.**

Affidavit in Support of an Application for
Search Warrant

\_\_\_\_ **United States**              \_\_\_\_ **Superior Court of the**
**District Court**                    **District of Columbia**

SCHEDULE A

(1) Address books, records, receipts, notes, ledgers, computers and magnetic storage devices, digital media, money orders, financial documents and money;

(2) Phone records, electronic beepers, pagers (and numbers contained therein), and cellular phones and records pertaining to their acquisition;

(3) Rental records and real estate documents;

(4) Papers, tickets, notes, schedules, receipts, and other items relating to domestic travel;

(5) Photographs and video tapes, in particular, photographs of coconspirator and/or assets, cars, and other items of value, and other indicia of proceeds of drug distribution; and,

(6) Indicia of occupancy, residence, and/or ownership of the premises

_____                    _____
Affiant                                       Assistant United States Attorney
Seventh District

Subscribed and sworn to before me on 2/22/08

_____
Judge, D.C. Superior Court                                    Page

6